UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN RUSSELL, #654763,

    Plaintiff,

v.

MARIETTE BERKSHIRE, et al.,

    Defendants.

_____/

Hon. Janet T. Neff

Case No. 1:19-cv-1014

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 16). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted, and this action terminated.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). Plaintiff is a transgender prisoner suffering from Gender Identity Disorder. The events giving rise to this action occurred while Plaintiff was incarcerated at the Bellamy Creek Correctional Facility (IBC).

On January 16, 2019, Plaintiff spoke with Mariette Berkshire, an IBC psychiatrist. Plaintiff reported that she was "being harassed by officers and prisoners because of her being transgender and non-conforming." On January 29, 2019, Plaintiff spoke with Emily Minnick, an IBC psychiatrist. Plaintiff reported that "her safety was

-1-

in jeopardy . . . because she's being harassed and pressed for sexual favors by other prisoners." Plaintiff asked Minnic to help her "move to a safer environment." On January 31, 2019, Berkshire and Minnic informed Plaintiff that they could not help her because "it was a unit problem."

On February 5, 2019, Plaintiff spoke with Daniel Robinson, an IBC Counselor, and requested to be "moved out of the unit." Plaintiff made this request because she was subject to "constant harassment" by "officers in her housing unit" and, furthermore, because her roommate was "pressing her for sexual favors." In response, Plaintiff was moved into a different cell within the same housing unit.

On February 11, 2019, Plaintiff spoke with Jonathan Atheran, the Chief Psychiatrist at IBC. Plaintiff informed Atheran of the problems she was experiencing in her housing unit and requested that she be moved to "a safe environment." Atheran declined Plaintiff's request, however, on the ground that she was "attempting to manipulate the system." On March 6, 2019, Plaintiff again requested that Atheran facilitate her transfer to a "safer environment." Atheran rejected Plaintiff's request, stating, "no, stop asking[,] it's not going to happen."

On March 12, 2019, Plaintiff spoke with Denise Bolton, a Resident Unit Manager at IBC. Plaintiff reported that her roommate was "pressing her for sex" and engaging in other inappropriate and offensive behavior. Plaintiff requested to be moved to the unit that houses transgender prisoners. Bolton refused Plaintiff's request at which

point Plaintiff asked to be placed in protective custody. Bolton responded by informing Plaintiff that she "has been a problem since she's been at [IBC] and that if she went into protective custody that [Bolton] would make sure [Plaintiff] was placed in lock-down for a long time."

On July 7, 2019, Plaintiff was raped by her roommate. Plaintiff reported this incident to a prison official who accused Plaintiff of "trying to get attention" and "trying to manipulate the system." On July 11, 2019, Plaintiff was transferred from IBC.

Plaintiff initiated this action against Berkshire, Minnic, Robinson, Atheran, and Bolton alleging violations of her Eighth Amendment rights as well as her Fourteenth Amendment right to equal protection. Defendants now move for summary judgment on the ground that Plaintiff has failed to properly exhaust her administrative remedies.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. The now current version of this Policy, which took effect on March 18, 2019, superseded the prior version which had been in effect since July 9, 2007. (MDOC Policy Directive 03.02.130 (Mar. 18, 2019). The events relevant to the present motion are governed by both versions of this Policy as such occurred both prior to and after March 18, 2019. With respect to the issues raised by Defendants'

motions, however, the two policies are identical. Specifically, both versions of this Policy require that a prisoner, prior to submitting a grievance, attempt to resolve the issue with staff, unless prevented by circumstances beyond his or her control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter with staff within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ V (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ R (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ BB (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy

Directive 03.02.130 ¶ FF (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

Defendants have submitted evidence that Plaintiff, prior to initiating the present action, pursued a single grievance, identified as Grievance IBC-19-05-1211-28b, through all three steps of the grievance process. (ECF No. 17, PageID.79-86). Plaintiff's grievance was rejected at Step I on the ground that it was "vague" and failed to identify the necessary "who, what, when, where, why and how" regarding her allegations. (ECF No. 17, PageID.85). This rationale for rejecting Plaintiff's grievance was affirmed at Steps II and III. (ECF No. 17, PageID.81-83).

Plaintiff does not dispute that this is the only grievance she pursued through all three steps of the grievance process. Instead, Plaintiff advances two arguments: (1) the determination that her grievance was vague was improper; and (2) any failure to exhaust her claims must be disregarded because the grievance process was "virtually unavailable." Because certain events in Plaintiff's complaint allegedly occurred after the grievance in question was filed and, therefore, cannot be considered to be within the scope of such grievance, the Court will assess Defendants' motion on a count-by-count basis for clarity.

    A.    Count I

In Count I of her complaint, Plaintiff alleges that Defendants violated her Eighth Amendment rights by failing to protect her from sexual abuse and harassment. Part of this claim is premised on Plaintiff's allegation that she was raped on July 7, 2019. This

alleged rape, however, occurred approximately six weeks *after* Plaintiff filed her grievance. Thus, Plaintiff's grievance cannot have encompassed or included claims regarding her alleged rape. To the extent, therefore, that Count I of Plaintiff's complaint is premised on Defendants' alleged failure to prevent or protect her from being raped on July 7, 2019, such claims have not been properly exhausted. With respect to any claims in Count I of Plaintiff's complaint that are premised on allegations of harassment that predated the filing of Plaintiff's grievance, such are likewise not properly exhausted.

As already noted, Plaintiff's grievance was rejected as vague. MDOC Policy clearly instructs prisoners that grievances must state the issues "briefly but concisely" and must include the "dates, times, places, and names of all those involved." Mich. Dep't of Corr., Policy Directive 03.02.130 ¶ S (eff. Mar. 18, 2019). The Court is not obligated to simply accept at face value the MDOC's assertion that a particular grievance is improperly vague. *See, e.g., Williams v. Winn*, 2019 WL 2252012 at *6 (E.D. Mich., Feb. 27, 2019) ("The rejection of a grievance is not, however, the end of the analysis. It is appropriate for the Court to review the prison official's administration of the state grievance procedure"). Nevertheless, a grievance that fails to give prison officials notice of the nature of a claim or against whom such is directed is properly rejected as vague under MDOC Policy. *See, e.g., Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 890 (6th Cir., May 1, 2009).

With respect to the claims of harassment included in her grievance, Plaintiff merely alleges in conclusory fashion that she experienced "constant harassment, comments, and blatant discrimination" based upon her transgender status. Plaintiff failed, however, to include in her grievance any specific factual allegations concerning such alleged harassment. Plaintiff also failed to indicate who committed the conduct in question or when such occurred. Plaintiff also failed to identify against whom her grievance was asserted. The Court finds, therefore, that with respect to Plaintiff's claims that Defendants failed to protect her from harassment, Plaintiff's grievance was properly rejected as vague. Accordingly, Defendants have met their burden to establish that Plaintiff failed to properly exhaust the claims articulated in Count I of her complaint.

B.   Count II

Plaintiff alleges that she was raped on July 7, 2019, approximately six weeks after she filed her grievance. Thus, Plaintiff's grievance cannot have encompassed or included claims regarding her alleged rape. In Count II of her complaint, Plaintiff alleges that Defendants violated her Eighth Amendment rights by failing to prevent or protect her from the rape, which allegedly occurred on July 7, 2019. Such claim is, therefore, not within the scope of Plaintiff's grievance. Accordingly, Defendants have met their burden to establish that Plaintiff failed to properly exhaust the claims articulated in Count II of her complaint.

### C. Count III

In Count III of her complaint, Plaintiff alleges that Defendants violated her right to equal protection by failing to protect her from harassment and sexual assault based on her status as a transgender prisoner.

To the extent Plaintiff alleges in her grievance that she was denied equal protection of the law, such is asserted in conclusory fashion. Plaintiff failed to include in her grievance any specific factual allegations concerning this claim. Plaintiff also failed to indicate who committed the conduct in question or when such occurred. Plaintiff also failed to identify against whom her grievance was asserted. The Court finds, therefore, that with respect to Plaintiff's claims that Defendants violated her right to equal protection, Plaintiff's grievance was properly rejected as vague. Accordingly, Defendants have met their burden to establish that Plaintiff failed to properly exhaust the claims articulated in Count III of her complaint.

### D. The Grievance Process was not Unavailable to Plaintiff

As discussed herein, the Court rejects Plaintiff's argument that her grievance was improperly rejected as vague. The Court likewise rejects Plaintiff's argument that, because the grievance process was unavailable, her failure to properly exhaust her claims must be disregarded.

As Plaintiff correctly asserts, she need only exhaust such administrative remedies as are available. *See Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones"). A prison

grievance process is considered unavailable in three circumstances: (1) when prison officials are "consistently unwilling to provide any relief"; (2) when the grievance process is "so opaque" as to be "incapable of use"; and (3) when prison officials "thwart inmates from taking advantage of a grievance process." *Ratliff v. Graves*, 761 Fed. Appx. 565, 567 (6th Cir., Jan. 24, 2019) (quoting *Ross*, 136 S.Ct. at 1859-60).

Plaintiff argues that, because prison officials "have a custom of declining to exercise their authority to remedy an issue, they have made a mockery of the grievance process and rendered any potential remedies unavailable." Plaintiff also argues that she has "observed grievances being rejected as vague regardless of the depth of detail provided." Plaintiff has failed, however, to articulate details or specifics regarding these allegations. Plaintiff has likewise failed to present evidence in support thereof. Instead, Plaintiff merely asserts the conclusion that the grievance process is unavailable. The Court finds, therefore, that Plaintiff has failed to establish that the prison grievance process was unavailable. *See, e.g., Ratliff*, 761 Fed. Appx. at 566-68 (prisoner's claim that grievance process was unavailable rejected where prisoner presented no evidence in support thereof). Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 16), be granted; Plaintiff's claims be dismissed without prejudice for failure to properly exhaust administrative remedies; and this action terminated. While the undersigned recommends that Plaintiff's claims be

dismissed, the undersigned does not find that an appeal of such dismissal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter would be undertaken in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: June 18, 2020

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge